**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, | ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| v. | ) Case No.: 1:25-cv-13941 |
| | ) |
| DREAM TOWN REALTY, INC.; ERLEND CANDEA; ARMAND CANDEA; 5748 N. HERMITAGE CONDOMINIUM ASSOCIATION; and THE BOARD OF DIRECTORS OF THE 5748 N. HERMITAGE CONDOMINIUM ASSOCIATION, | ) ) ) ) ) ) ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGEMENT

Plaintiff, Selective Insurance Company of America ("Selective"), by and through its counsel, for its Complaint for Declaratory Judgment against Defendants, Dream Town Realty Inc. ("Dream Town"), Erlend Candea, Armand Candea, 5748 N. Hermitage Condominium Association (the "Association"), and The Board of Directors of the 5748 N. Hermitage Condominium Association (collectively "Board"), allege as follows:

## INTRODUCTION

1.      Pursuant to 28 U.S.C. §§ 2201 and 2202, Selective seeks a declaratory judgment that it does not have a duty to defend or indemnify Defendants under commercial general liability and commercial umbrella liability insurance policies relative to the lawsuit captioned *5748 N. Hermitage Condominium Association et al., v. 1743 W. Rosehill, LLC et al.*, pending in the Circuit Court of Cook County, Illinois, County Department, Law Division, Case No. 2022L001325 (the "Underlying Lawsuit").

2.      On January 10, 2025, Dream Town tendered its defense in the Underlying Lawsuit to Selective.

3.      The Underlying Lawsuit alleges that in 2017, Erlend Candea and Armand Candea, through and on behalf of various entities, purchased the property located at 5748 N. Hermitage Avenue, Chicago, Illinois ("Property") with the sole intent to construct a residential development for sale and profit.

4.      Construction of the Property was completed in 2020.

5.      The Property's units were marketed and sold by Dream Town through its real estate broker, Erlend Candea.

6.      The Association and the Board claim that units in the Property are riddled with significant construction defects.  As a result, the Association and the Board filed the Underlying Lawsuit against Erlend Candea, Armand Candea, and Dream Town, among others.

7.      The Association and the Board claim that Erlend Candea, Armand Candea, and Dream Town's (collectively, "Defendants") intentional and fraudulent conduct caused the Association's and the Board's alleged damages and seek to hold Defendants liable for their damages.

8.      Defendants seek defense and indemnity from Selective under commercial general liability and commercial umbrella liability policies for their potential liability in the Underlying Lawsuit.

9.      Coverage under the Selective policies is only potentially available for those sums an insured is legally obligated to pay as damages because of "property damage" caused by an "occurrence," if the "property damage" takes place during the Selective policies' respective policy periods.

10.     Erlend Candea and Armand Candea are not insureds under the Selective policies relative to the Underlying Lawsuit because they are not allegedly liable for conduct within their scope of employment for Dream Town or while performing duties related to the conduct of Dream Town's business.

11.     The Association and the Board do not seek to hold Defendants liable for "property damage" caused by an "occurrence" in the Underlying Lawsuit.  Rather, the Association and the Board seek to hold Defendants liable for breach of Illinois Real Estate License Act; breach of Illinois Consumer Fraud and Deceptive Business Practices Act, negligent misrepresentation; professional negligence; intentional misrepresentation/fraud; breach of fiduciary duty, violation of ordinance; constructive fraud; and breach of fiduciary duty of good faith.  These causes of action are based on alleged fraudulent and intentional conduct, which do not constitute an "occurrence."

12.     Further, notwithstanding the fact that there is no alleged "property damage" caused by an "occurrence," the Selective policies include  policy exclusions and conditions that preclude coverage for the Underlying Lawsuit.

13.     Accordingly, a real, substantial, and justiciable controversy exists between Selective and Defendants with respect to Selective's rights, duties, and obligations under the Selective Policy relative to the lawsuit, which is subject to resolution by this Court under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

14.     Selective is a New Jersey corporation with its principal place of business in New Jersey.  Selective is therefore a citizen of New Jersey.

15.     The Association is a duly authorized not-for-profit corporation and an Illinois Condominium Association, having its principal place of business in Chicago, Illinois.   The

Association is therefore a citizen of Illinois. The Association is the plaintiff in the Underlying Lawsuit and is named in this declaratory judgment action as a nominal defendant from whom no relief is sought other than that it be bound by the judgment sought herein.

16.     The Board was established to act in a representative capacity for residents of the Property pursuant to 765 ILCS 605/9.1(b) of the Illinois Condominium Property Act. The Board is therefore a citizen of Illinois. The Board is the plaintiff in the Underlying Lawsuit and is named in this declaratory judgment action as a nominal defendant from whom no relief is sought other than that it be bound by the judgment sought herein.

17.     Dream Town is an Illinois corporation with one of its principal places of business located at 4553 N. Lincoln Avenue, Chicago, Illinois. Dream Town is therefore a citizen of Illinois.

18.     Erlend Candea is an individual residing in Chicago, Illinois. Erlend Candea is therefore a citizen of Illinois.

19.     Armand Candea is an individual residing in Chicago, Illinois. Armand Candea is named in this declaratory judgment as a nominal defendant from whom no relief is sought other than that he be bound by the judgment sought therein.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction under 28 U.S.C. § 2201 and 28 U.S.C. § 1332 as complete diversity of citizenship exists between the parties, the matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000), and an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the alleged events and omissions giving rise to this action occurred in this District, and because Defendants are subject to this Court's jurisdiction.

## BACKGROUND

22.     On February 9, 2022, the Association and the Board filed their Complaint in the Underlying Lawsuit against Erlend Candea, Armand Candea, and Dream Town, among others.

23.     On April 28, 2025, the Association and the Board filed their operative Third Amended Complaint in the Underlying Lawsuit against Erlend Candea, Armand Candea, and Dream Town, among others.  A copy of the Third Amended Complaint ("TAC") is attached hereto as **Exhibit A**.

24.     The TAC alleges that in or around April 2017, Erlend Candea and Armand Candea, on behalf of Rainmaker Holdings, LLC f/k/a Rainmaker Real Estate Holdings, LLC d/b/a Candea Development, purchased the Property.  Ex. A, SELECTIVE 003034

25.     The TAC alleges that construction of the Property was completed in 2020.

26.     The TAC alleges that the Property's units were marketed and sold by Dream Town, where Erlend Candea is a real estate broker.

27.     The TAC alleges that from the Association's formation until October 1, 2021, its management and administration was conducted by the "Initial Board" consisting of Erlend Candea and Armand Candea.  The control of the Association was transferred from the "Initial Board," among others, to the Board elected by the unit owner membership "at the Turnover Meeting on September 14, 2021 ('Turnover')."  Ex. A, SELECTIVE 003034-35.

28.     The Association and the Board allege, however, that at the time of the Turnover, the Property was riddled with construction defects, including: roofing defects, water intrusion and

structural cracks, balcony defects, fire safety hazards, plumbing defects, miscellaneous health and safety issues, mold and biological growth, and outdoor deck tile/paver defects. Ex. A SELECTIVE 003037-46.

29.     The TAC alleges that in 2021, and prior to the Turnover, a group of unit owners approached Erlend Candea and Armand Candea and disclosed certain construction defects at the Property to them. The TAC alleges, however, that Erlend Candea and Armand Candea failed to take appropriate actions to address these concerns. Ex. A SELECTIVE 003047.

30.     The Board and the Association bring causes of action against Erlend Candea for: Breach of Fiduciary Duty (Count VII); Constructive Fraud (Count X); Violation of Ordinance (Count XIX); Breach of Fiduciary Duty of Good Faith (Count XXII); Professional Negligence Broker (Count XXV); Negligent Misrepresentation (Count XXVII); Intentional Misrepresentation/Fraud (Count XXIX); Breach of Illinois Consumer Fraud and Deceptive Business Practices Act (Count XXX); and Breach of Illinois Real Estate License Act (Count XXXI). Ex. A SELECTIVE 003056-86.

31.     The Board and the Association bring causes of action against Armand Candea for: Breach of Fiduciary Duty (Count VIII); Constructive Fraud (Count XI); and Violation of Ordinance (Count XXI). Ex. A SELECTIVE 003059-76.

32.     The Board and the Association bring causes of action against Dream Town for: Violation of Ordinance (Count XX); Breach of Fiduciary Duty of Good Faith (Count XXIII); Constructive Fraud (Count XXIV); Professional Negligence – Broker (Count XVI); Negligent Misrepresentation (Count XXVIII); and Breach of Illinois Real Estate License Act (Count XXXII). Ex. A SELECTIVE 003072-87.

33.     The TAC alleges that Defendants engaged in intentional and fraudulent conduct, and that this intentional and fraudulent conduct damaged the Association and the Board.  Ex. A SELECTIVE 003032.

## THE SELECTIVE POLICIES

34.     Selective issued Commercial Policy No. S 1952967 to Dream Town, effective annually from October 1, 2016 to October 1, 2025 (the "Selective Policies", copies of which are attached as Exhibit B-1, Exhibit B-2, and Exhibit B-3 ).

35.     The Selective Policies contain both a Businessowners  Coverage Part with Liability coverage ("CGL Coverage Part") and a Commercial Umbrella Liability coverage part ("Umbrella Coverage Part").

36.     The CGL Coverage Part has a  $1 million per "occurrence" limit and a $3 million aggregate.

37.     The Umbrella Coverage Part has a $2 million per claim limit and a $2 million aggregate.

**A.     The Selective Policies' CGL Coverage**

38.     The CGL Coverage Part of the Selective Policies contains an Insuring Agreement which in relevant part potentially provides coverage for those sums that an insured is legally obligated to pay as damages because of "property damage" caused by an "occurrence," if the "property damage" occurs during the respective Selective Policy's policy period:

**SECTION II — LIABILITY**

  **A. Coverages**

   **1. Business Liability**

       **a.** We will pay those sums that the insured becomes legally
            obligated to pay as damages because of "bodily injury",

7

"property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result.
But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** — Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension - Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

\*     \*     \*

39.     The CGL Coverage Part defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. B-1, SELECTIVE 000153, SELECTIVE 000534,    SELECTIVE 000861, SELECTIVE 001181; Ex. B-2, SELECTIVE 001508, SELECTIVE 001812, SELECTIVE 002120, SELECTIVE 002515; Ex. B-3, SELECTIVE 002883.

40.     The Selective Policies define "insured" to include, in relevant part, the insured's [Dream Town's] "employees," "but only for acts within the scope of their employment by [Dream

Town] or while performing duties related to the conduct of [Dream Town's] business." Ex. B-1, SELECTIVE 000149, SELECTIVE 000530, SELECTIVE 000857, SELECTIVE 001177; Ex. B-2, SELECTIVE 001504, SELECTIVE 001808, SELECTIVE 002116, SELECTIVE 002511; Ex. B-3 SELECTIVE 002879.

41.     Coverage under the Selective Policies is subject to Exclusion a. Expected Or Intended Injury, which precludes coverage  in relevant part for "'property damage' expected or intended from the standpoint of the insured." Ex. B-1, SELECTIVE 000141, SELECTIVE 000522, SELECTIVE 000849, SELECTIVE 001169; Ex. B-2, SELECTIVE 001496, SELECTIVE 001800, SELECTIVE 002108, SELECTIVE 002503; Ex. B-3 SELECTIVE 002871.

42.     Coverage under the Selective Policies is subject to Exclusion j. Professional Services, which precludes coverage in relevant part for "'property damage' caused by the rendering or failure to render any professional service."   Ex. B-1, SELECTIVE 000144, SELECTIVE 000525, SELECTIVE 000852, SELECTIVE 001172; Ex. B-2 SELECTIVE 001499, SELECTIVE 001803, SELECTIVE 002111, SELECTIVE 002506; Ex. B-3 SELECTIVE 002874. The exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the … 'property damage' … involved the rendering or failure to render of any professional service."     Ex. B-1, SELECTIVE 000145, SELECTIVE 000526, SELECTIVE 000853, SELECTIVE 001173; Ex. B-2, SELECTIVE 001500, SELECTIVE 001804, SELECTIVE 002112, SELECTIVE 002507; Ex. B-3, SELECTIVE 002875.

43.     The Selective Policies also include a Fungi Or Bacteria Exclusion endorsement, which precludes coverage, in relevant part, for (1) "property damage" which would not have occurred, in whole or in part, but for the actual,  alleged, or threatened inhalation of, ingestion of,

contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage; and (2) any loss, cost or expenses arising out of abatement, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or any other person or entity. Ex. B-1, SELECTIVE 000166, SELECTIVE 000549, SELECTIVE 000876, SELECTIVE 001196; Ex. B-2, SELECTIVE 001523, SELECTIVE 001827, SELECTIVE 002135, SELECTIVE 002530; Ex. B-3, SELECTIVE 002898.

44.     The Selective Policies also include an Errors And Omissions - Exclusion endorsement, which precludes coverage for, in relevant part, "'property damage' … arising out of any error, omission, defect or deficiency of the insured, or any person or organization acting on the insured's behalf, in: consulting; evaluating; advising; instructing; designing; testing; reporting; or otherwise failing to provide services." Ex. B-1, SELECTIVE 000243, SELECTIVE 000626, SELECTIVE 000954, SELECTIVE 001276; Ex. B-2, SELECTIVE 001603, SELECTIVE 001907, SELECTIVE 002216, SELECTIVE 002611; Ex. B-3, SELECTIVE 002955.

45.     The Selective Policies also include a Two Or More Policies Issued By Us endorsement, which provides, in relevant part, that "[r]egardless of the Limits of Insurance shown in the Declarations of this policy, if any named insured shown in the Declarations covered by this policy is also covered under any other policy issued by us or any company affiliated with us, then: … [t]he most we will pay for all such … 'property damage' … arising out of any one 'occurrence' will be the highest applicable Limit of Insurance under any one policy…." Ex. B-1, SELECTIVE 000244, SELECTIVE 000627, SELECTIVE 000955, SELECTIVE 001277; Ex. B-2,

SELECTIVE 001604, SELECTIVE 001908, SELECTIVE 002217, SELECTIVE 002612; Ex. B-3 SELECTIVE 002956.

**B.     The Selective Policies' Umbrella Coverage**

46.     The Selective Policies also include an Umbrella Coverage Part which contains an Insuring Agreement that potentially provides coverage in relevant part for "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence," if "property damage" occurs during the Selective Policies' policy periods:

**SECTION I — COVERAGES**

**A. Insuring Agreement**

**1.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

    **a.** The amount we will pay for the "ultimate net loss" is limited as described in **Section III — Limits of Insurance;** and

    **b.** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgements or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section**

### I — Coverages, C. Supplementary Payments.

**2.** This insurance applies to "bodily injury", or "property damage" only if:

    **a.** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **b.** The "bodily injury" or "property damage" occurs during the policy period; and

    **c.** Prior to the policy period, no insured listed under Paragraph **A.** of **Section II — Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

47. The Umbrella Coverage Part defines "occurrence," in relevant part, as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions that result in … 'property damage'." Ex. B-1, SELECTIVE 000262, SELECTIVE 000645, SELECTIVE 000972, SELECTIVE 001294; Ex. B-2, SELECTIVE 001621, SELECTIVE 001925, SELECTIVE 002235, SELECTIVE 002630; Ex. B-3, SELECTIVE 002976.

48. The Umbrella Coverage Part defines "retained limit" as the greater of (1) "[t]he total of the limits as shown in the Declarations for the coverage(s) in question, and the limits of any other insurance not shown in the declarations that is valid and collectible;" or (2) "[t]he limit shown in the Declarations as the 'self-retained limit'." Ex. B-1, SELECTIVE 000263, SELECTIVE 000646, SELECTIVE 000973, SELECTIVE 001295; Ex. B-2, SELECTIVE 001622, SELECTIVE 001926, SELECTIVE 002236, SELECTIVE 002631; Ex. B-3, SELECTIVE 002977.

49.     The Umbrella Coverage Part defines "ultimate net loss," in relevant part, as "[a]ll sums for which the insured [Dream Town] becomes legally obligated to pay as damages, either by reason of adjudication or settlement or any arbitration or the "underlying insurer's" consent.. [sic] This includes deduction for recoveries."  Ex. B-1, SELECTIVE 000263, SELECTIVE 000646, SELECTIVE 000973, SELECTIVE 001295; Ex. B-2, SELECTIVE 001622, SELECTIVE 001926, SELECTIVE 002236, SELECTIVE 002631; Ex. B-3, SELECTIVE 002977.

50.     The Umbrella Coverage Part defines "underlying insurance" as "any policies of insurance listed in the Declarations under the section titled Schedule of Underlying Insurance and Limits."     Ex. B-1, SELECTIVE 000264, SELECTIVE 000647, SELECTIVE 000974, SELECTIVE 001296; Ex. B-2, SELECTIVE 001623, SELECTIVE 001927, SELECTIVE 002237, SELECTIVE 002632; Ex. B-3, SELECTIVE 002978.

51.     The Umbrella Coverage Part defines insured to include, in relevant part, Dream Town's "employees," "but only for acts within the scope of their employment by [Dream Town] or while performing duties related to the conduct of [Dream Town's] business."   Ex. B-1, SELECTIVE 000254, SELECTIVE 000637, SELECTIVE 000964, SELECTIVE 001286; Ex. B-2, SELECTIVE 001613, SELECTIVE 001917, SELECTIVE 002227, SELECTIVE 002622; Ex. B-3 SELECTIVE 002968.

52.     The Umbrella Coverage Part also defines insured to include, in relevant part, "[a]ny other person or organization insured under any policy of 'underlying insurance'."   Ex. B-1, SELECTIVE 000255, SELECTIVE 000638, SELECTIVE 000965, SELECTIVE 001287; Ex. B-2, SELECTIVE 001614, SELECTIVE 001918, SELECTIVE 002228, SELECTIVE 002623; Ex. B-3, SELECTIVE 002969.

14

53. Coverage under the Umbrella Coverage Part is subject to Exclusion 7. Expected or Intended Injury, which precludes coverage for, in relevant part, "'property damage' expected or intended from the standpoint of the insured." Ex. B-1, SELECTIVE 000250, SELECTIVE 000633, SELECTIVE 000960, SELECTIVE 001282; Ex. B-2, SELECTIVE 001609, SELECTIVE 001913, SELECTIVE 002223, SELECTIVE 002618; Ex. B-3, SELECTIVE 002964.

54. Coverage under the Umbrella Coverage Part is subject to the Commercial Umbrella Liability 2015 Changes endorsement, which precludes coverage for, in relevant part, "'property damage' … arising out of the rendering or failure to render any professional service." Ex. B-1, SELECTIVE 000281, SELECTIVE 000664, SELECTIVE 000991, SELECTIVE 001313; Ex. B-2, SELECTIVE 001640, SELECTIVE 001944, SELECTIVE 002255, SELECTIVE 002650; Ex. B-3 SELECTIVE 002998.

55. Coverage under the Umbrella Coverage Part is subject to a Real Estate Agents And Brokers Errors & Omissions Exclusions endorsement, which precludes coverage, in relevant part, for "'property damage' arising out of any misrepresentation, error or omission by [Dream Town] or any real estate agent or broker who is either employed by [Dream Town] or performing work on [Dream Town's] behalf in such capacity." Ex. B-1, SELECTIVE 000267, SELECTIVE 000650, SELECTIVE 000977, SELECTIVE 001299; Ex. B-2, SELECTIVE 001626, SELECTIVE 001930, SELECTIVE 002240, SELECTIVE 002635; Ex. B-3, SELECTIVE 002982.

56. The Umbrella Coverage Part also includes a Fungi Or Bacteria Exclusion endorsement, which precludes coverage, in relevant part, for (1) "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, or threatened inhalation of,

ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage; and (2) any loss, cost or expenses arising out of abatement, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or any other person or entity. Ex. B-1, SELECTIVE 000275, SELECTIVE 000658, SELECTIVE 000985, SELECTIVE 001307; Ex. B-2, SELECTIVE 001634, SELECTIVE 001938, SELECTIVE 002249, SELECTIVE 002644; Ex. B-3, SELECTIVE 002991.

## COUNT I – DECLARATORY JUDGMENT
### No Duty to Defend or Indemnify – Insured Status – Erlend Candea

57.     Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

58.     The Selective Policies only potentially provide coverage to an insured.

59.     With respect to the CGL Coverage Part, the Selective Policies define insured to include, in relevant part, Dream Town's "employees," "but only for acts within the scope of their employment by [Dream Town] or while performing duties related to the conduct of [Dream Town's] business." Ex. B-1, SELECTIVE 000149, SELECTIVE 000530, SELECTIVE 000857, SELECTIVE 001177; Ex. B-2, SELECTIVE 001504, SELECTIVE 001808, SELECTIVE 002116, SELECTIVE 002511; Ex. B-3, SELECTIVE 002879.

60.     With respect to the Umbrella Coverage Part, the Selective Policies define insured to include, in relevant part, Dream Town's "employees," "but only for acts within the scope of their employment by [Dream Town] or while performing duties related to the conduct of [Dream Town's] business." Ex. B-1, SELECTIVE 000254, SELECTIVE 000637, SELECTIVE 000964,

SELECTIVE 001286; Ex. B-2, SELECTIVE 001613, SELECTIVE 001917, SELECTIVE 002227, SELECTIVE 002622; Ex. B-3, SELECTIVE 002968. "Insured" is further defined to include, in relevant part, "[a]ny other person or organization insured under any policy of 'underlying insurance'." Ex. B-1, SELECTIVE 000255, SELECTIVE 000638, SELECTIVE 000965, SELECTIVE 001287; Ex. B-2, SELECTIVE 001614, SELECTIVE 001918, SELECTIVE 002228, SELECTIVE 002623; Ex. B-3, SELECTIVE 002969.

61.     With respect to the Underlying Lawsuit, including the conduct alleged therein, Erlend Candea was neither acting within the scope of his employment by Dream Town nor performing duties related to the conduct of Dream Town's business when he engaged in intentional and fraudulent conduct.

62.     Therefore, Erlend Candea does not qualify as an insured under the Selective Policies in connection with the Underlying Lawsuit.

63.     Because Erlend Candea does not qualify as an insured under the CGL Coverage and Umbrella Coverage of the Selective Policies, Selective owes no duty to defend or indemnify Erlend Candea in connection with the  Underlying Lawsuit under the Selective Policies.

64.     Accordingly, a real, substantial, and justiciable controversy exists between Selective and Erland Candea with respect to Selective's rights, duties, and obligations under the Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

## COUNT II – DECLARATORY JUDGMENT
### No Duty to Defend or Indemnify – Insured Status – Armand Candea

65.     Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

66.     The Selective Policies only potentially provide coverage to an insured.

67. With respect to the CGL Coverage Part, the Selective Policies define insured to include, in relevant part, Dream Town's "employees," "but only for acts within the scope of their employment by [Dream Town] or while performing duties related to the conduct of [Dream Town's] business." Ex. B-1, SELECTIVE 000149, SELECTIVE 000530, SELECTIVE 000857, SELECTIVE 001177; Ex. B-2, SELECTIVE 001504, SELECTIVE 001808, SELECTIVE 002116, SELECTIVE 002511; Ex. B-3, SELECTIVE 002879.

68. With respect to the Umbrella Coverage Part, the Selective Policies define insured to include, in relevant part, Dream Town's "employees," "but only for acts within the scope of their employment by [Dream Town] or while performing duties related to the conduct of [Dream Town's] business." Ex. B-1, SELECTIVE 000254, SELECTIVE 000637, SELECTIVE 000964, SELECTIVE 001286; Ex. B-2, SELECTIVE 001613, SELECTIVE 001917, SELECTIVE 002227, SELECTIVE 002622; Ex. B-3, SELECTIVE 002968. Insured is further defined to include, in relevant part, "[a]ny other person or organization insured under any policy of 'underlying insurance'." Ex. B-1, SELECTIVE 000255, SELECTIVE 000638, SELECTIVE 000965, SELECTIVE 001287; Ex. B-2, SELECTIVE 001614, SELECTIVE 001918, SELECTIVE 002228, SELECTIVE 002623; Ex. B-3, SELECTIVE 002969.

69. At all times relevant to this matter, including with respect to the conduct at issue in the Underlying Lawsuit, Armand Candea was never employed by Dream Town.

70. Therefore, Armand Candea does not qualify as an insured under the Selective Policies in connection with the Underlying Lawsuit.

71. Because Armand Candea does not qualify as an insured under the CGL Coverage and Umbrella Coverage Parts of the Selective Policies, Selective owes no coverage obligation to Armand Candea in connection with the Underlying Lawsuit under the Selective Policies.

72.     Accordingly, a real, substantial, and justiciable controversy exists between Selective and Armand Candea with respect to Selective's rights, duties, and obligations under the Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

**COUNT III – DECLARATORY JUDGMENT**
**<u>No Duty to Defend or Indemnify – Selective Policies CGL Coverage – Dream Town</u>**

73.     Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

74.     Under the CGL Coverage Part, the Selective Policies only potentially provide coverage for "property damage" caused by an "occurrence."

75.     With respect to the CGL Coverage Part, the Selective Policies define "occurrence," in relevant part, as an accident.   Ex. B-1, SELECTIVE 000153, SELECTIVE 000534, SELECTIVE 000861, SELECTIVE 001181; Ex. B-2, SELECTIVE 001508, SELECTIVE 001812, SELECTIVE 002120, SELECTIVE 002515; Ex. B-3, SELECTIVE 002883.

76.     The Underlying Lawsuit alleges that Dream Town, by virtue of its role as the exclusive listing broker for the Property, disseminated, or caused to be disseminated, false and material information to all prospective and actual unit purchasers relative to the condition of the Property in violation of City of Chicago Municipal Code Section 13-72-030.

77.     The Underlying Lawsuit alleges that Dream Town breached its fiduciary duty of good faith and fair dealing by (1) failing to inform unit purchasers of the allegedly defective conditions; (2) disseminating, or causing to be disseminated, false and material information to all prospective and actual unit purchasers; (3) omitting, or causing to be omitted, material information related to the condition of the Property; and (4) distributing, or causing to be distributed, a Property

19

Report containing misrepresentations regarding the status of the Property and compliance with code requirements.

78.     The Underlying Lawsuit alleges that as a result of Dream Town's alleged conduct, Dream Town committed constructive fraud upon the Association and the Board.

79.     The Underlying Lawsuit alleges that Dream Town's alleged conduct constitutes professional errors and/or omissions and a breach of Dream Town's duty of reasonable care.

80.     The Underlying Lawsuit further alleges that Dream Town had actual knowledge of the defective conditions of the Property and failed to disclose these conditions to actual and prospective unit purchasers, and in fact made affirmative misrepresentations and omissions related to the conditions, in violation of Section 15-25 of the Illinois Real Estate License Act.

81.     Dream Town's alleged conduct is intentional and does not constitute an "occurrence" under the Selective Policies.

82.     Therefore, Dream Town does not potentially face liability in the Underlying Lawsuit for covered "property damage" caused by an "occurrence," and as such, Selective owes no duty to defend or indemnify Dream Town for the Underlying Lawsuit under the Selective Policies.

83.     Further, even if Dream Town faced liability in the Underlying Lawsuit for "property damage" caused by an "occurrence," which it does not, Exclusion a. Expected Or Intended Injury, Exclusion j. Professional Services, the Fungi Or Bacteria Exclusion endorsement, and the Errors And Omissions - Exclusion endorsement exclude coverage for Dream Town under the Selective Policies' CGL Coverage for the Underlying Lawsuit.

84.     Accordingly, a real, substantial, and justiciable controversy exists between Selective and Dream Town with respect to Selective's rights, duties, and obligations under the

Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

**COUNT IV – DECLARATORY JUDGMENT**
**No Duty to Defend or Indemnify – Selective Policies Umbrella Coverage – Dream Town**

85.    Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

86.    Under the Umbrella Coverage Part, the Selective Policies only potentially provide coverage, in relevant part, for "property damage" caused by an "occurrence."

87.    With respect to the Umbrella Coverage Part, the Selective Policies define "occurrence," in relevant part, as an accident.   Ex. B-1, SELECTIVE 000262, SELECTIVE 000645, SELECTIVE 000972, SELECTIVE 001294; Ex. B-2, SELECTIVE 001621, SELECTIVE 001925, SELECTIVE 002235, SELECTIVE 002630; Ex. B-3, SELECTIVE 002976.

88.    The Underlying Lawsuit alleges that Dream Town, by virtue of its role as the exclusive listing broker for the Property, disseminated, or caused to be disseminated, false and material information to all prospective and actual unit purchasers relative to the condition of the Property in violation of City of Chicago Municipal Code Section 13-72-030.

89.    The Underlying Lawsuit alleges that Dream Town breached its fiduciary duty of good faith and fair dealing by (1) failing to inform unit purchasers of the allegedly defective conditions; (2) disseminating, or causing to be disseminated, false and material information to all prospective and actual unit purchasers; (3) omitting, or causing to be omitted, material information related to the condition of the Property; and (4) distributing, or causing to be distributed, a Property Report containing misrepresentations regarding the status of the Property and compliance with code requirements.

90.     The Underlying Lawsuit alleges that as a result of Dream Town's alleged conduct, Dream Town committed constructive fraud upon the Association and the Board.

91.     The Underlying Lawsuit alleges that Dream Town's alleged conduct constitutes professional errors and/or omissions and a breach of Dream Town's duty of reasonable care.

92.     The Underlying Lawsuit further alleges that Dream Town had actual knowledge of the defective conditions of the Property and failed to disclose these conditions to actual and prospective unit purchasers, and in fact made affirmative misrepresentations and omissions related to the conditions, in violation of Section 15-25 of the Illinois Real Estate License Act.

93.     Dream Town's alleged conduct is intentional and does not constitute an "occurrence" under the Selective Policies.

94.     Therefore, Dream Town does not potentially face liability in the Underlying Lawsuit for covered "property damage" caused by an "occurrence," and as such, Selective owes no duty to defend or indemnify Dream Town for the Underlying Lawsuit under the Selective Policies.

95.     Further, even if Dream Town faced liability in the Underlying Lawsuit for "property damage" caused by an "occurrence," which it does not, Exclusion 7. Expected Or Intended Injury, the Commercial Umbrella Liability 2015 Changes endorsement, the Real Estate Agents And Brokers Errors & Omissions Exclusions endorsement, and the Fungi Or Bacteria Exclusion endorsement exclude coverage for Dream Town under the Selective Policies' Umbrella Coverage for the Underlying Lawsuit.

96.     Accordingly, a real, substantial, and justiciable controversy exists between Selective and Dream Town with respect to Selective's rights, duties, and obligations under the

Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

## COUNT V – DECLARATORY JUDGMENT
### No Duty to Defend or Indemnify – Selective Policies CGL Coverage – Erlend Candea
#### (*Pled In the Alternative*)

97.    Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

98.    This cause of action is pled in the alternative in the event it is determined that Erlend Candea qualifies as an insured under the Selective Policies.

99.    Under the CGL Coverage, the Selective Policies only potentially provide coverage for "property damage" caused by an "occurrence."

100.    With respect to the CGL Coverage, the Selective Policies define "occurrence," in relevant part, as an accident.  Ex. B-1, SELECTIVE 000153, SELECTIVE 000534, SELECTIVE 000861, SELECTIVE 001181; Ex. B-2, SELECTIVE 001508, SELECTIVE 001812, SELECTIVE 002120, SELECTIVE 002515; Ex. B-3, SELECTIVE 002883.

101.    The Underlying Lawsuit alleges that Erlend Candea, while serving as a member of the "Initial Board," breached his fiduciary duties by (1) failing to inform unit purchasers of the allegedly defective conditions; (2) failing to remedy and remediate the defective conditions; (3) intentionally misrepresenting the status of the Property; (4) failing to properly budget, levy assessments in the appropriate amount, collect and set aside reasonable reserves for capital expenditures and deferred maintenance; (5) distributing a Property Report that contained misrepresentations regarding the status of the Property and compliance with Code requirements; and (6) failing to collect 100% of assessments.

102.     The Underlying Lawsuit alleges the foregoing conduct was intentional and done for the sole purpose of increasing and maximizing profits in breach of his fiduciary duties.

103.     As a result, the Underlying Lawsuit alleges Erlend Candea committed a constructive fraud upon the Association and the Board.

104.     The Underlying Lawsuit also alleges that Erlend Candea made intentional misrepresentations to all prospective and actual unit purchasers relative to the Property in violation of City of Chicago Municipal Code Section 13-72-030.

105.     The Underlying Lawsuit also alleges that Erlend Candea breached his fiduciary duty of good faith and fair dealing by (1) failing to inform unit purchasers of the allegedly defective conditions; (2) failing to remedy and remediate the allegedly defective conditions; and (3) distributing a Property Report containing misrepresentations regarding the status of the Property and compliance with code requirements.

106.     The Underlying Lawsuit alleges that the foregoing conduct was intentional, outrageous, willful, and wanton, and was done for the sole purpose of increasing and maximizing profits in breach of his fiduciary duties.

107.     The Underlying Lawsuit also alleges that as a result of Erlend Candea's alleged conduct, Erlend Candea committed constructive fraud upon the Association and the Board.

108.     The Underlying Lawsuit alleges that Erlend Candea's alleged conduct constitutes professional errors and/or omissions and a breach of Erlend Candea's duty of reasonable care.

109.     The Underlying Lawsuit also alleges that Erlend Candea negligently and intentionally misrepresented to prospective and actual unit purchasers salient information relative to the Property's alleged defects.

110. The Underlying Lawsuit further alleges that Erlend Candea had actual knowledge of the defective conditions of the Property and failed to disclose these conditions to actual and prospective unit purchasers, and in fact made affirmative misrepresentations and omissions related to the conditions, in violation of Section 15-25 of the Illinois Real Estate License Act.

111. The Underlying Lawsuit further alleges that the foregoing conduct constitutes a breach by Erlend Candea of the Illinois Consumer Fraud and Deceptive Practices Act.

112. Erlend Candea's alleged conduct is intentional and does not constitute an "occurrence" under the Selective Policies.

113. Therefore, Erlend Candea does not potentially face liability in the Underlying Lawsuit for covered "property damage" caused by an "occurrence," and as such, Selective owes no duty to defend or indemnify Erlend Candea for the Underlying Lawsuit under the Selective Policies.

114. Further, even if Erlend Candea faced liability in the Underlying Lawsuit for "property damage" caused by an "occurrence," which he does not, Exclusion a. Expected Or Intended Injury, Exclusion j. Professional Services, the Fungi Or Bacteria Exclusion endorsement, and the Errors And Omissions - Exclusion endorsement exclude coverage for Erlend Candea under the Selective Policies' CGL Coverage for the Underlying Lawsuit.

115. Accordingly, a real, substantial, and justiciable controversy exists between Selective and Erlend Candea with respect to Selective's rights, duties, and obligations under the Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

**COUNT VI – DECLARATORY JUDGMENT**
**No Duty to Defend or Indemnify – Selective Policies Umbrella Coverage – Erlend Candea**
(*Pled In The Alternative*)

116. Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

117. This cause of action is pled in the alternative in the event it is determined that Erlend Candea qualifies as an insured under the Selective Policies.

118. Under the Umbrella Coverage Part, the Selective Policies only potentially provide coverage, in relevant part, for "property damage" caused by an "occurrence."

119. With respect to the Umbrella Coverage Part, the Selective Policies define "occurrence," in relevant part, as an accident. Ex. B-1, SELECTIVE 000262, SELECTIVE 000645, SELECTIVE 000972, SELECTIVE 001294; Ex. B-2, SELECTIVE 001621, SELECTIVE 001925, SELECTIVE 002235, SELECTIVE 002630; Ex. B-3, SELECTIVE 002976.

120. The Underlying Lawsuit alleges that Erlend Candea, while serving as a member of the "Initial Board," breached his fiduciary duties by (1) failing to inform unit purchasers of the allegedly defective conditions; (2) failing to remedy and remediate the defective conditions; (3) intentionally misrepresenting the status of the Property; (4) failing to properly budget, levy assessments in the appropriate amount, collect and set aside reasonable reserves for capital expenditures and deferred maintenance; (5) distributing a Property Report that contained misrepresentations regarding the status of the Property and compliance with Code requirements; and (6) failing to collect 100% of assessments.

121. The Underlying Lawsuit alleges the foregoing conduct was intentional and done for the sole purpose of increasing and maximizing profits in breach of his fiduciary duties.

122. As a result, the Underlying Lawsuit alleges Erlend Candea committed a constructive fraud upon the Association and the Board.

123.    The Underlying Lawsuit also alleges that Erlend Candea made intentional misrepresentations to all prospective and actual unit purchasers relative to the Property in violation of City of Chicago Municipal Code Section 13-72-030.

124.    The Underlying Lawsuit also alleges that Erlend Candea breached his fiduciary duty of good faith and fair dealing by (1) failing to inform unit purchasers of the allegedly defective conditions; (2) failing to remedy and remediate the allegedly defective conditions; and (3) distributing a Property Report containing misrepresentations regarding the status of the Property and compliance with code requirements.

125.    The Underlying Lawsuit alleges that the foregoing conduct was intentional, outrageous, willful, and wanton, and was done for the sole purpose of increasing and maximizing profits in breach of his fiduciary duties.

126.    The Underlying Lawsuit also alleges that as a result of Erlend Candea's alleged conduct, Erlend Candea committed constructive fraud upon the Association and the Board.

127.    The Underlying Lawsuit alleges that Erlend Candea's alleged conduct constitutes professional errors and/or omissions and a breach of Erlend Candea's duty of reasonable care.

128.    The Underlying Lawsuit also alleges that Erlend Candea negligently and intentionally misrepresented to prospective and actual unit purchasers salient information relative to the Property's alleged defects.

129.    The Underlying Lawsuit further alleges that Erlend Candea had actual knowledge of the defective conditions of the Property and failed to disclose these conditions to actual and prospective unit purchasers, and in fact made affirmative misrepresentations and omissions related to the conditions, in violation of Section 15-25 of the Illinois Real Estate License Act.

130.     The Underlying Lawsuit further alleges that the foregoing conduct constitutes a breach by Erlend Candea of the Illinois Consumer Fraud and Deceptive Practices Act.

131.     Erlend Candea's alleged conduct is intentional and does not constitute an "occurrence" under the Selective Policies.

132.     Therefore, Erlend Candea does not potentially face liability in the Underlying Lawsuit for covered "property damage" caused by an "occurrence," and as such, Selective owes no duty to defend or indemnify Erlend Candea for the Underlying Lawsuit under the Selective Policies.

133.     Further, even if Erlend Candea faced liability in the Underlying Lawsuit for "property damage" caused by an "occurrence," which he does not, Exclusion 7. Expected Or Intended Injury, the Commercial Umbrella 2015 Changes endorsement, the Real Estate Agents And Brokers Errors & Omissions Exclusions endorsement, and the Fungi Or Bacteria Exclusion endorsement exclude coverage for Erlend Candea under the Selective Policies' Umbrella Coverage for the Underlying Lawsuit.

134.     Accordingly, a real, substantial, and justiciable controversy exists between Selective and Erlend Candea with respect to Selective's rights, duties, and obligations under the Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

## COUNT VII – DECLARATORY JUDGMENT
### No Duty to Defend or Indemnify – Selective Policies CGL Coverage – Armand Candea
**(*Pled In the Alternative*)**

135.     Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

136. This cause of action is pled in the alternative in the event it is determined that Armand Candea qualifies as an insured under the Selective Policies.

137. Under the CGL Coverage Part, the Selective Policies only potentially provide coverage for "property damage" caused by an "occurrence."

138. With respect to the CGL Coverage Part, the Selective Policies define "occurrence," in relevant part, as an accident. Ex. B-1, SELECTIVE 000153, SELECTIVE 000534, SELECTIVE 000861, SELECTIVE 001181; Ex. B-2, SELECTIVE 001508, SELECTIVE 001812, SELECTIVE 002120, SELECTIVE 002515; Ex. B-3, SELECTIVE 002883.

139. The Underlying Lawsuit alleges that Armand Candea, while serving as a member of the "Initial Board," breached his fiduciary duties by (1) failing to inform unit purchasers of the allegedly defective conditions; (2) failing to remedy and remediate the defective conditions; (3) intentionally misrepresenting the status of the Property; (4) failing to properly budget, levy assessments in the appropriate amount, collect and set aside reasonable reserves for capital expenditures and deferred maintenance; (5) distributing a Property Report that contained misrepresentations regarding the status of the Property and compliance with Code requirements; and (6) failing to collect 100% of assessments.

140. The Underlying Lawsuit alleges the foregoing conduct was intentional and done for the sole purpose of increasing and maximizing profits in breach of his fiduciary duties.

141. As a result, the Underlying Lawsuit alleges Armand Candea committed constructive fraud upon the Association and the Board.

142. The Underlying Lawsuit also alleges that Armand Candea made material misrepresentations to all prospective and actual unit purchasers relative to the Property in violation of City of Chicago Municipal Code Section 13-72-030.

143. Armand Candea's alleged conduct is intentional and does not constitute an "occurrence" under the Selective Policies.

144. Therefore, Armand Candea does not potentially face liability in the Underlying Lawsuit for covered "property damage" caused by an "occurrence," and as such, Selective owes no duty to defend or indemnify Armand Candea for the Underlying Lawsuit under the Selective Policies.

145. Further, even if Armand Candea faced liability in the Underlying Lawsuit for "property damage" caused by an "occurrence, which he does not, Exclusion a. Expected Or Intended Injury, Exclusion j. Professional Services, the Fungi Or Bacteria Exclusion endorsement, and the Errors And Omissions - Exclusion endorsement exclude coverage for Armand Candea under the Selective Policies' CGL Coverage for the Underlying Lawsuit.

146. Accordingly, a real, substantial, and justiciable controversy exists between Selective and Armand Candea with respect to Selective's rights, duties, and obligations under the Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

## COUNT VIII – DECLARATORY JUDGMENT
## No Duty to Defend or Indemnify – Selective Policies Umbrella Coverage – Armand Candea
### (*Pled In the Alternative*)

147. Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

148. This cause of action is pled in the alternative in the event it is determined that Armand Candea qualifies as an insured under the Selective Policies.

149. Under the Umbrella Coverage Part, the Selective Policies only potentially provide coverage, in relevant part, for "property damage" caused by an "occurrence."

150. With respect to the Umbrella Coverage Part, the Selective Policies define "occurrence," in relevant part, as an accident. Ex. B-1, SELECTIVE 000262, SELECTIVE 000645, SELECTIVE 000972, SELECTIVE 001294; Ex. B-2, SELECTIVE 001621, SELECTIVE 001925, SELECTIVE 002235, SELECTIVE 002630; Ex. B-3, SELECTIVE 002976.

151. The Underlying Lawsuit alleges that Armand Candea, while serving as a member of the "Initial Board," breached his fiduciary duties by (1) failing to inform unit purchasers of the allegedly defective conditions; (2) failing to remedy and remediate the defective conditions; (3) intentionally misrepresenting the status of the Property; (4) failing to properly budget, levy assessments in the appropriate amount, collect and set aside reasonable reserves for capital expenditures and deferred maintenance; (5) distributing a Property Report that contained misrepresentations regarding the status of the Property and compliance with Code requirements; and (6) failing to collect 100% of assessments.

152. The Underlying Lawsuit alleges the foregoing conduct was intentional and done for the sole purpose of increasing and maximizing profits in breach of his fiduciary duties.

153. As a result, the Underlying Lawsuit alleges Armand Candea committed a constructive fraud upon the Association and the Board.

154. The Underlying Lawsuit also alleges that Armand Candea made material misrepresentations to all prospective and actual unit purchasers relative to the Property in violation of City of Chicago Municipal Code Section 13-72-030.

155. Armand Candea's alleged conduct is intentional and does not constitute an "occurrence" under the Selective Policies.

156.    Therefore, Armand Candea does not potentially face liability in the Underlying Lawsuit for covered "property damage" caused by an "occurrence," and as such, Selective owes no duty to defend or indemnify Armand Candea for the Underlying Lawsuit under the Selective Policies.

157.    Further, even if Armand Candea faced liability in the Underlying Lawsuit for "property damage" caused by an "occurrence," which he does not, Exclusion 7. Expected Or Intended Injury, the Commercial Umbrella Liability 2015 Changes endorsement, the Real Estate Agents And Brokers Errors & Omissions Exclusions endorsement, and the Fungi Or Bacteria Exclusion endorsement exclude coverage for Erlend Candea under the Selective Policies' Umbrella Coverage for the Underlying Lawsuit.

158.    Accordingly, a real, substantial, and justiciable controversy exists between Selective and Armand Candea with respect to Selective's rights, duties, and obligations under the Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

## COUNT IX – DECLARATORY JUDGMENT
### Two Or More Policies Issued By Us Endorsement – Selective Policies CGL Coverage – All Defendants
**(*Pled In the Alternative*)**

159.    Selective repeats and incorporates each and every allegation in the above-referenced paragraphs of this Complaint as if fully set forth herein.

160.    With respect to the CGL Coverage Part, the Selective Policies contain a Two Or More Policies Issued By Us endorsement, which provides, in relevant part, that if any if any named insured shown in the Declarations is covered by the Selective Policies and is also covered under any other policy issued by Selective, then the most Selective will pay for all such "property damage" arising out of an "occurrence" will be the highest applicable limit of insurance under any

one policy. Ex. B-1, SELECTIVE 000244, SELECTIVE 000627, SELECTIVE 000955, SELECTIVE 001277; Ex. B-2, SELECTIVE 001604, SELECTIVE 001908, SELECTIVE 002217, SELECTIVE 002612; Ex. B-3, SELECTIVE 002956.

161.    Selective issued the Selective Policies for consecutive annual policy periods, in relevant part, effective October 1, 2016 to October 1, 2025.

162.    Due to the applicability of the Two Or More Policies Issued By Us endorsement, if Selective owes any coverage obligation to Dream Town, Erlend Candea, and/or Armand Candea for the Underlying Lawsuit, Selective's coverage obligation is limited to the highest applicable limit of insurance under any one policy.

163.    Accordingly, a real, substantial, and justiciable controversy exists between Selective and Dream Town, Selective and Erlend Candea, and Selective and Armand Candea with respect to Selective's rights, duties, and obligations under the Selective Policies relative to the Underlying Lawsuit, which is subject to resolution by this Court under 28 U.S.C. § 2201 and 2202.

## PRAYER FOR RELIEF

WHEREFORE, Selective respectfully requests that this Court enter judgement in Selective' s favor and against Defendants as follows:

a.    That Erlend Candea does not qualify as an insured under the Selective Policies;

b.    That Armand Candea does not qualify as an insured under the Selective Policies;

c.    That Selective owes no duty to defend or indemnify Dream Town under the Selective Policies' CGL Coverage Part;

d.    That Selective owes no duty to defend or indemnify Dream Town under the Selective Policies' Umbrella Coverage Part;

e.    That Selective owes no duty to defend or indemnify Erlend Candea under the

Selective Policies' CGL Coverage Part;

f.    That Selective owes no duty to defend or indemnify Erlend Candea under the Selective Policies' Umbrella Coverage Part;

g.    That Selective owes no duty to defend or indemnify Armand Candea under the Selective Policies' CGL Coverage Part;

h.    That Selective owes no duty to defend or indemnify Armand Candea under the Selective Policies' Umbrella Coverage Part;

i.    Declaring, alternatively, that Selective's coverage obligation is limited to the highest applicable limit of insurance under any one policy under the Selective Policy's Two Or More Policies Issued By Us endorsement;

j.    That Dream Town, Erlend Candea, Armand Candea, The Association, and The Board are bound by the final judgment and/or order entered by this Court; and

k.    For such other relief as this court deems just and proper.

Dated: November 13, 2025          Respectfully submitted,

*/s/ Greta A. Matzen*
Greta A. Matzen (#6307545)
William O. Williams, III (#6324850)
NICOLAIDES FINK THORPE MICHAELIDES
SULLIVAN LLP
600 17th Street, Suite 2700S
Denver, CO 80202
Telephone: (312) 585-1400
gmatzen@nicolaidesllp.com
wwilliams@nicolaidesllp.com
ssternburg@nicolaidesllp.com
kcorini@nicolaidesllp.com

***Attorneys for Plaintiff Selective Insurance
Company of America***

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2025 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: */s/ Greta A. Matzen*_____
Greta A. Matzen